UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DANIEL NELSON,

                 Plaintiff,

      -against-

CHARLES BENANTE, FRANK BELLO, SCOTT IAN
ROSENFELD, ROBERT CAGGIANO,
JOSEPH BELLARDINI p/k/a JOEY BELLADONNA,
collectively professionally known as the recording artist
ANTHRAX, CHARLES BENANTE, LLC, BERDON
LLP, NO MUSIC NO LIFE, LLC, MEGAFORCE
RECORDS, INC., and WORSHIP MUSIC TOURING,
LLC,

                 Defendants.
-------------------------------------------------------------------x

AMENDED COMPLAINT
Plaintiff Demands
Trial by Jury

Civil Action No. 11 cv 8126 (DAB)

ECF CASE

        Daniel Nelson, by and through his attorney, Law Office of Marc M. Isaac, hereby

alleges as follows:

## SUMMARY OF ACTION

    1.    This action is brought by plaintiff against the defendant members of the recording

artist known as "Anthrax" for a declaration of co-authorship and co-ownership of works that

were jointly authored by plaintiff and members of Anthrax, which appear on, or were written for,

Anthrax's latest album entitled *Worship Music*.  Despite plaintiff's co-authorship and co-

ownership of those works, the defendant members of Anthrax have refused to acknowledge him

as co-author and to account to him for his proper share of profits generated by the exploitation of

those works.  Plaintiff additionally seeks relief related to the violation of his rights under limited

liability company agreements he entered into while he was a member of Anthrax and for false

and defamatory statements about him published by certain members of Anthrax.

JURISDICTION AND VENUE

2.     This action arises under the Copyright Act of 1976, 17 U.S.C. §101 *et seq*. (the "Copyright Act"). This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338. This Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

3.     Venue is proper on the grounds that a substantial part of the events or omissions giving rise to plaintiff's claims arose in this district and one of the defendants resides in this district.

PARTIES

4.     Defendant No Music No Life, LLC ("NMNL") is a Delaware limited liability company, with its principal place of business located at c/o Berdon LLP, 360 Madison Avenue, New York, NY 10017. NMNL was created for the express purpose of, among other things, producing, administering, licensing and/or otherwise exploiting masters, compositions, and recordings with respect to the recording artist professionally known as Anthrax.

5.     Defendant Worship Music Touring, LLC ("Touring") is, upon information and belief, a Delaware limited liability company with a principal place of business located at c/o Berdon LLP, 360 Madison Avenue, New York, NY 10017. Touring, upon information and belief, was created to administer and exploit Anthrax's touring and merchandising activities.

6.     Plaintiff Daniel Nelson ("Nelson") resides in Levittown, New York and is a member of NMNL and Touring. He was a member of Anthrax.

2

7.     Defendant Charles Benante ("Benante") and/or Charles Benante, LLC ( "Benante LLC") are members of NMNL.

8.     Benante is a member of Anthrax.

9.     Defendant Frank Bello ("Bello") is a member of NMNL and a member of Anthrax.

10.     Defendant Scott Ian Rosenfeld ("Rosenfeld") is a member of NMNL and a member of Anthrax.

11.     Defendant Robert Caggiano ("Caggiano") is a member of Anthrax and, upon information and belief, performs on *Worship Music*.

12.     Defendant Joseph Bellardini p/k/a Joey Belladonna ("Belladonna") is a member of Anthrax and, upon information and belief, performs on *Worship Music*.

13.     Upon information and belief, defendant Megaforce Records is the distributor of Anthrax's latest album *Worship Music*.

14.     Upon information and belief, defendant Berdon LLP was Anthrax and/or NMNL's business manager.

## BACKGROUND

15.     In or about October 2007, Nelson joined Anthrax as its lead singer.

16.     At the time, Anthrax was preparing the material that was to be released on its next album -- *Worship Music*.

3

17.     In or about September 30, 2008, Nelson, Benante, Bello, and Rosenfeld were the members of Anthrax.

18.     Upon information and belief, NMNL was formed on or about September 24, 2008.

19.     Nelson, Benante and/or Benante LLC, Bello, and Rosenfeld entered into a limited liability company operating agreement, dated September 30, 2008 ("NMNL Operating Agreement"), whereby they became the sole members of NMNL.

20.     Pursuant to the NMNL Operating Agreement, NMNL was formed for the general purpose of producing, distributing, administering, licensing and/or otherwise exploiting masters, compositions, and recordings with respect to Anthrax.

21.     Pursuant to Article 2.9 of the NMNL Operating Agreement, all material created by the members of NMNL for Anthrax, except for the underlying copyright in compositions and the services of the members, is the property of NMNL.

22.     Pursuant to Article 3.12 of the NMNL Operating Agreement, all of the members of NMNL were granted the power to manage the business of NMNL.

23.     Pursuant to Article 3.4(f) of the NMNL Operating Agreement, no member of NMNL could be discharged without the unanimous approval of all of the members of NMNL.

24.     Pursuant to Article 6.2 of the NMNL Operating Agreement, in the event of the removal or resignation of a member, the removed or resigning member was entitled to be paid, in cash, within ninety (90) days of the date of such removal or resignation, the value of the member's ("withdrawing member") membership interest in the amount that the withdrawing

4

member would have been entitled to receive had NMNL sold all of its assets at fair market value as determined by an appraiser or appraisers.

    25.    Pursuant to Article 8.2(b) of the NMNL Operating Agreement, within ninety (90) days after the end of each fiscal year, NMNL was required to cause each member to be furnished with copies of any and all financial statements of NMNL as of the last day of such year.

    26.    Pursuant to Schedule A of the NMNL Operating Agreement, Nelson's membership interest in NMNL is 21%.

    27.    Nelson has, and continues to have, a 21% membership interest in NMNL.

    28.    Prior to, and subsequent to, entering into the NMNL Operating Agreement, Nelson, Benante, Bello, and Rosenfeld created material, including lyrics, songs, and musical compositions (rhythms, harmonies, and melodies), that were to be included as part of Anthrax's next release -- an album entitled *Worship Music*.

    29.    Prior to, and subsequent to, entering into the NMNL Operating Agreement, Nelson performed as a member of Anthrax on tours of the United States and abroad.

    30.    Upon information and belief, in 2008, Nelson, Benante, Bello, and Rosenfeld entered into a limited liability company operating agreement ("Touring Operating Agreement"), whereby they became members of Touring, which was created for the purpose of administering and exploiting Anthrax's touring and merchandising activities.

    31.    Upon information and belief, Nelson has a membership interest in Touring.

    32.    In July 2009, Benante, Bello, and Rosenfeld announced that dates on an upcoming Anthrax European tour had been canceled due to the illness of Nelson.

33.     Contrary to the representations of Benante, Bello, and Rosenfeld, Nelson was not ill and he was ready, willing, and able to go on tour with Anthrax.

34.     After an exchange of electronic mail messages, and an in person meeting with the band's manager, Nelson confirmed to the members of Anthrax that he was indeed ready, willing, and able to tour with the band in July 2009.

35.     In or about July 2009, Benante, Bello, and Rosenfeld made the claim that Nelson resigned from Anthrax.

36.     In or about July 2009, Benante, Bello, and Rosenfeld made the contrary claim that they had fired Nelson from Anthrax.

37.     Contrary to the representations of Benante, Bello, and Rosenfeld, Nelson never resigned from Anthrax.

38.     In or about July 2009, Benante, Bello, and Rosenfeld informed Nelson that he was no longer a member of Anthrax and ceased to communicate with him concerning the activities and obligations of the band.

39.     Nelson's membership in NMNL was never terminated.

40.     Nelson never resigned from his membership in NMNL.

41.     Nelson remains a member of NMNL, with a membership interest of 21%.

42.     Upon information and belief, Belladonna and Caggiano became members of Anthrax subsequent to July 2009.

6

43.     On or about September 13, 2011, Anthrax released an album entitled *Worship Music*.

44.     Pursuant to the NMNL Operating Agreement, all revenues to be derived from *Worship Music* are the property of NMNL.

45.     Upon information and belief, NMNL, Touring, and/or Anthrax entered into touring agreements, merchandising agreements, and distribution agreements concerning the United States, Japan, and Europe in which Nelson has an interest.

46.     Nelson participated in the authorship of many of the musical compositions that appear on *Worship Music*.

47.     A musical composition that Nelson co-authored appears on the soundtrack to a National Hockey League video game and is credited to Anthrax.

48.     Musical compositions that Nelson co-authored during his tenure with Anthrax have been made available on digital music outlets.

49.     Benante and/or Benante LLC, Bello, and Rosenfeld have refused to provide Nelson with an accounting or any other information concerning the value of his membership interest in NMNL despite the fact that numerous songs that appear on *Worship Music* were co-authored by Nelson.

50.     Benante, Bello, and Rosenfeld have refused to provide Nelson with an accounting or any other information concerning the value of his membership interest in Touring despite the fact that, upon information and belief, Anthrax has toured extensively and sold merchandise since the creation of Touring.

51.     While a member of Anthrax, Nelson co-authored songs appearing on, or written for, *Worship Music* titled, "Earth on Hell," "The Devil You Know," "Fight Em 'Til You Can't," "The Giant," "Crawl," "Father," "Face With No Name," "Finish First," "Revolution Screams," "The Constant," and "I'm Alive."

52.     Nelson has been advised that Benante, Bello, Rosenfeld, Belladonna, and Caggiano have taken the position that he was not involved in the authorship of any of the songs on *Worship Music* and that he will not be credited or compensated for his contributions to the songs contained on *Worship Music* or written for *Worship Music*.

<u>AS AND FOR A FIRST CLAIM FOR RELIEF</u>
(Declaration of Co-Authorship and Co-Ownership)

53.     All of the allegations contained in the paragraphs above are incorporated by reference.

54.     Defendants Benante, Belladonna, Bello, Caggiano, and Rosenfeld (collectively, the "Anthrax Defendants") contend that they are the sole owners and sole authors of the below-identified musical compositions appearing on *Worship Music* or written for *Worship Music* ("Worship Music Compositions") entitled:

- The Constant

- Crawl

- The Devil You Know

- Earth on Hell

- Father

8

- Face With No Name

- Fight 'Em 'Til You Can't

- Finish First

- The Giant

- I'm Alive

- Revolution Screams

55.     Nelson contends that he is a co-author and co-owner of each of the foregoing musical compositions by virtue of his independently copyrightable contributions of lyrics and music, including rhythms, harmonies, and melodies.

56.     Upon information and belief, the Anthrax Defendants and/or Megaforce Records have exploited the Worship Music Compositions by, among other things, the release and sale of the album *Worship Music*, the release of certain of the Worship Music Compositions as singles, and the licensing of certain of the Worship Music Compositions for use in video games.

57.     By reason of the foregoing, an actual and justiciable controversy exists between Nelson and the Anthrax Defendants concerning the authorship and ownership of the foregoing Worship Music Compositions and Nelson is entitled to: (i) a judgment declaring him as a co-author and co-owner of the copyrights in and to the Worship Music Compositions and (ii) an order directing the Anthrax Defendants and/or Megaforce Records to account for and pay over to him his proper share of all monies generated by the exploitation of the Worship Music Compositions.

9

## AS AND FOR A SECOND CLAIM FOR RELIEF
(Breach of Duty to Account)

58.    All of the allegations contained in the paragraphs above are incorporated by reference.

59.    By reason of the foregoing, Nelson is the co-owner of the copyrights in and to the Worship Music Compositions.

60.    Upon information and belief, the Anthrax Defendants and/or Megaforce Records have licensed or otherwise exploited the Worship Music Compositions, and have received, will continue to receive, and have retained, income from their exploitation of the Worship Music Compositions including, but not limited to, their use as singles and as part of the album *Worship Music*.

61.    The Anthrax Defendants and/or Megaforce Records have a duty to account to Nelson for his proper share of all income received by them from the exploitation of the Worship Music Compositions.

62.    The Anthrax Defendants and/or Megaforce Records have failed, refused, or neglected to properly account to Nelson for his share of the income received by them from the exploitation of the Worship Music Compositions.

63.    The Anthrax Defendants and/or MegaForce Records have breached their duty to account to Nelson as co-owner of the copyrights to the Worship Music Compositions.

64.    As the result, Nelson has been damaged, in an amount to be determined at trial, but believed to be not less than $500,000.

10

65.     Nelson is entitled to a complete accounting concerning the Anthrax Defendants and/or Megaforce Records's exploitation of the Worship Music Compositions.

### AS AND FOR A THIRD CLAIM FOR RELIEF
(Breach of Contract)

66.     All of the allegations contained in the paragraphs above are incorporated by reference.

67.     Nelson performed all of his obligations under the NMNL Operating Agreement.

68.     NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld violated the NMNL Operating Agreement by failing to provide Nelson with complete NMNL financial statements or tax returns for the year 2008 and failing to provide him with any financial statements or tax returns for the years 2009 and to the present.

69.     Due to NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld's failure to provide Nelson with the financial information that he is entitled to under the NMNL Operating Agreement, he has not received payments or distributions that, upon information and belief, he is owed in connection with his tenure with Anthrax or as a member of NMNL.

70.     Due to NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld's failure to provide Nelson with the financial information that he is entitled to under the NMNL Operating Agreement, he has been unable to determine the value of his membership interest in NMNL and the amount due to him by virtue of his membership in NMNL.

71.     NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld violated the NMNL Operating Agreement by, upon information and belief, failing to properly account for Nelson's membership and/or monetary interests in NMNL.

11

72.     NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld violated the NMNL Operating Agreement by, upon information and belief, diverting money owed to Nelson by virtue of his membership in NMNL.

73.     As the result, he has been damaged, in an amount to be determined at trial, but believed to be not less than $500,000.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

74.     All of the allegations contained in the paragraphs above are incorporated by reference.

75.     Upon information and belief, in connection with the execution of the NMNL Operating Agreement, Berdon LLP agreed to serve as Anthrax and/or NMNL's business manager.

76.     As the business manager of Anthrax and/or NMNL, Berdon LLP owed a fiduciary duty to Nelson.

77.     Upon information and belief, in breach of its fiduciary duty, Berdon LLP failed to advise Nelson that his membership and/or monetary interests in NMNL, and other entities in which he had an interest by virtue of his membership in Anthrax, were being diverted.

78.     Upon information and belief, in breach of its fiduciary duty, Berdon LLP failed to advise Nelson that his membership and/or monetary interests in NMNL and other entities in which he had an interest by virtue of his membership in Anthrax, were not being accounted for.

79.     As the result, Nelson has been damaged, in an amount to be determined at trial, but believed to be not less than $500,000.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
(Declaratory Judgment/Accounting)

80.   All of the allegations contained in the paragraphs above are incorporated by reference.

81.   NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld, have contended that Nelson's membership interest in NMNL was terminated.

82.   NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld's contention that Nelson's membership interest in NMNL was terminated is flatly contradicted by Section 6.2 of the NMNL Operating Agreement, which requires, among other things, an appraisal of the terminated member's interest in NMNL and a cash payment of the value of the terminated member's membership interest within ninety (90) days of such termination.

83.   Nelson contends that he remains a member of NMNL entitled to a 21% membership interest in NMNL.

84.   By reason of the foregoing, an actual and justiciable controversy exists between Nelson and NMNL, Benante and/or Benante LLC, Bello, and Rosenfeld concerning Nelson's membership in NMNL and Nelson is entitled to: (i) a judgment declaring him a member of NMNL with all the attendant rights set forth in its operating agreement (ii) an order directing Benante and/or Benante LLC, Bello, Rosenfeld, and NMNL, to provide a complete financial account of all of NMNL's activities from its inception to the present and to pay over to him his proper share of all monies to which he is entitled by virtue of his membership in NMNL.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

85.     All of the allegations contained in the paragraphs above are incorporated by reference.

86.     As members of NMNL, Benante (individually and/or as a member of Benante LLC), Bello, Rosenfeld, and Nelson owed fiduciary duties to one another with respect to their membership and management of NMNL.

87.     Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by, among other things, engaging in self-dealing transactions for the purpose of denying Nelson his membership and/or monetary interests in NMNL.

88.     Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by conspiring to deny Nelson his rights as co-author and co-owner of the Worship Music Compositions.

89.     Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by refusing to provide Nelson with information he required to determine the value of his membership and/or monetary interests in NMNL.

90.     Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by failing to properly account for Nelson's membership and/or monetary interests in NMNL.

14

91.     Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by diverting money owed to Nelson by virtue of his membership in NMNL.

92.     As the result, Nelson has been damaged, in an amount to be determined at trial, but believed to be not less than $500,000.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment/Accounting)

93.     All of the allegations contained in the paragraphs above are incorporated by reference.

94.     Touring, Benante, Bello, and Rosenfeld have contended that Nelson's membership interest in Touring was terminated.

95.     It is Nelson's position that his membership interest in Touring was not terminated and that he remains a member of Touring.

96.     By reason of the foregoing, an actual and justiciable controversy exists between Nelson and Touring, Benante, Bello, and Rosenfeld concerning Nelson's membership in Touring and Nelson is entitled to: (i) a judgment declaring him a member of Touring with all of the rights set forth in its operating agreement and (ii) an order directing Benante, Bello, Rosenfeld, and Touring to provide a complete financial account of all of Touring's activities from its inception to the present and to pay over to him his proper share of all monies to which he is entitled by virtue of his membership in Touring.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF
(Breach of Contract)

97.     All of the allegations contained in the paragraphs above are incorporated by reference.

98.     Upon information and belief, Benante, Bello, Rosenfeld and Nelson are members of Touring.

99.     Upon information and belief, Nelson performed all of his duties and obligations under the Touring Operating Agreement.

100.    Upon information and belief, Benante, Bello, Rosenfeld, and Touring have violated the Touring Operating Agreement by failing to pay Nelson certain monies he is owed pursuant to the Touring Operating Agreement.

101.    Upon information and belief, Benante, Bello, Rosenfeld, and Touring have violated the Touring Operating Agreement by failing to keep an accounting of Nelson's membership and/or monetary interests in Touring.

102.    Upon information and belief, Benante, Bello, Rosenfeld, and Touring have violated the Touring Operating Agreement by diverting money owed to Nelson by virtue of his membership in Touring.

103.    As the result, Nelson has been damaged, in an amount to be determined at trial, but believed to be not less than $500,000.

16

## AS AND FOR A NINTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty)

104.    All of the allegations contained in the paragraphs above are incorporated by reference.

105.    As members of Touring, Benante, Bello, Rosenfeld, and Nelson owed fiduciary duties to one another with respect to their membership and management of Touring.

106.    Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by, among other things, engaging in conduct for the purpose of denying Nelson his membership and/or monetary interests in Touring.

107.    Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by conspiring to deny Nelson the information he required to determine the monetary value of his membership and/or monetary interests in Touring.

108.    Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by failing to keep an account of his membership and/or monetary interests in Touring.

109.    Upon information and belief, Benante, Bello, and Rosenfeld breached the fiduciary duties that they owed to Nelson by diverting money owed to Nelson by virtue of his membership interest in Touring.

110.    As the result, Nelson has been damaged, in an amount to be determined at trial, but believed to be not less than $500,000.

17

## AS AND FOR A TENTH CLAIM FOR RELIEF
### (Defamation)

111.   All of the allegations in the paragraphs above are incorporated by reference.

112.   In July 2009 and subsequently, Benante, Bello, and Rosenfeld have stated in numerous interviews that have appeared in print and on the internet that Anthrax was forced to cancel dates on a tour due to the illness of Nelson.

113.   In July 2009 and subsequently, Benante, Bello, and Rosenfeld have stated in numerous interviews that have appeared in print and on the internet that Nelson abruptly resigned from Anthrax.

114.   In a press release issued by Anthrax on or about July 17, 2009, it was stated that certain dates of an Anthrax European tour were canceled because Nelson informed the band that he was seriously ill and unable to perform.

115.   In a press release issued by Anthrax on or about July 21, 2009, it was stated that "as announced last week, thrash legends Anthrax regretfully cancelled the first three dates on the second leg of their European tour due to new vocalist Dan Nelson's unexpected illness."

116.   In an interview posted on the website Metal Hammer, on or about July 23, 2009, Rosenfeld stated that Nelson was not fired and that he quit the band.

117.   In an interview with the magazine Guitar World for its November 2011 issue, excerpts of which were posted on the website Blabbermouth.net on or about October 4, 2011, Rosenfeld stated that Nelson "quit the band" and Benante stated that he "was a bully and he tried to bully [the members of Anthrax]."

118.   Each of those statements is false and defamatory.

119.    Benante, Bello, and Rosenfeld published those statements with actual malice, that is, with knowledge that the statements were false, or with reckless disregard as to the truth or falsity of the statements.

120.    Immediately prior to the cancellation of dates on Anthrax's European tour in July 2009, Nelson had informed the other members of Anthrax and Anthrax's management that he was ready, willing, and able to go on the tour and perform.

121.    Nelson did not quit or resign from Anthrax.

122.    No part of Anthrax's European tour was canceled due to Nelson's purported illness.

123.    Benante, Bello, and Rosenfeld's conduct was so malicious and egregious as to warrant the imposition of punitive damages.

124.    Benante, Bello, and Rosenfeld's actions were particularly reckless and malicious because they were on notice that the statements were false; Benante, Bello, and Rosenfeld published and republished those statements despite such notice.

125.    As a direct and proximate result of Benante, Bello, and Rosenfeld's intentional defamation, Nelson has suffered, and will continue to suffer, loss of income, damage to his personal and professional reputations, mental anguish and humiliation, and damage to his business.

126.    As the result, Nelson has been damaged, in an amount to be determined at trial, but believed to be not less than $150,000.

WHEREFORE, Plaintiff Daniel Nelson demands judgment as follows:

19

a.   on the first claim for relief, a judgment declaring him co-author and co-owner of the copyrights to the Worship Music Compositions and ordering the Anthrax Defendants and/or Megaforce Records to account and pay over to him his proper share of the monies generated by their exploitation of the Worship Music Compositions;

b.   on the second claim for relief, in an amount to be determined at trial, but believed to be not less than $500,000 and ordering the Anthrax Defendants and/or Megaforce Records to account to him for all profits obtained by the exploitation of the Worship Music Compositions;

c.   on the third claim for relief against Benante and/or Benante LLC, Bello, Rosenfeld, and NMNL  in an amount to be determined at trial, but believed to be not less than $500,000;

d.   on the fourth claim for relief against Berdon LLP, in an amount to be determined at trial, but believed to be not less than $500,000;

e.   on the fifth claim for relief, a judgment declaring him a member of NMNL with all attendant rights set forth in its operating agreement and ordering Benante and/or Benante LLC, Bello, Rosenfeld, and/or NMNL to provide a complete accounting with respect to the activities of NMNL since its inception to the present and to pay over to him all monies owed to him pursuant to the NMNL Operating Agreement;

f.   on the sixth claim for relief as against Benante, Bello, and Rosenfeld, in an amount to be determined at trial, but believed to be not less than $500,000;

20

g.   on the seventh claim for relief, a judgment declaring him a member of Touring with all attendant rights set forth in its operating agreement and ordering Benante, Bello, Rosenfeld, and/or Touring to provide a complete accounting with respect to the activities of Touring since its inception to the present and to pay over to him all monies owed to him pursuant to the Touring Operating Agreement;

h.   on the eighth claim for relief as against Benante, Bello, and Rosenfeld, and Touring, in an amount to be determined at trial, but believed to be not less than $500,000;

i.   on the ninth claim for relief as against Benante, Bello, and Rosenfeld, in an amount to be determined at trial, but believed to be not less than $500,000;

j.   on the tenth claim for relief as against Benante, Bello, and Rosenfeld, in an amount to be determined at trial, but believed to be not less than $150,000, along with punitive damages;

k.   attorneys' fees, costs, disbursements; and

l.   such other and further relief as the Court may deem just and proper.

Plaintiff demands trial by jury of all issues so triable.

Dated:   Freeport, New York
     December 13, 2011

        LAW OFFICE OF MARC M. ISAAC PLLC

      By: _Marc M. Ysaac_

        Marc M. Isaac (MI-1873)
        210 Moore Avenue
        Freeport, New York  11520
        (516) 750-1422
        misaac@mmipllc.com
        *Attorney for Plaintiff*